May it please the court. Proceed. Good morning your honors. It's a privilege to be here. My name is Ryan Silke. I represent the petitioner in this case of Bussen Quarries. Bussen Quarries is a mining operation, a surface mining operation, that operates just south of St. Louis here off by the river. And the reason we're here today is because back in December of 2014 the Mine Safety and Health Administration, MSHA, came and done a routine inspection at the Bussen Quarry, Jefferson Barracks operation. And they issued a violation, or citation alleging a violation, of 30 CFR 56.15005, MSHA's fault protection standard, to Bussen on the allegation that the fault protection was not being used when it was needed to be used. Bussen contested that citation. It was brought up to an administrative law judge which affirmed the violation. Bussen then appealed that that affirmance and the Federal Mine Safety and Health Review Commission issued a split decision wherein two commissioners agreed that it should the citation should be affirmed. And then two commissioners, the acting chairman Althon and Commissioner Young, agreed that it should be vacated because there was no substantial evidence supporting the violation. We now appeal that decision which in effect affirmed... Take a moment and this is an odd circumstance where the Commission splits two to two because normally we defer to them. Correct. What do you think the standard review is here? Well I believe the standard of review is still a substantial evidence of whether... Yeah but go slowly. Do we defer to the Commission at all? Well I believe the case law is... I mean I don't know the answer to that. Okay you didn't find anything because is this different from an unreported ALJ opinion? We have law about the low level of deference an unreported ALJ opinion gets. Okay. Was this any different than an unreported ALJ opinion? I believe the case law, Your Honor, is that when there's a split decision you just refer back to the original ALJ. Okay yeah but now that's back to my question. What deference does that get? Well I believe that we have to judge or you have to judge Judge Miller's, the ALJ in the case, decision based on whether it's substantial evidence or not. Okay. And my argument here is that it's absolutely not supported by substantial evidence. So it's like an unreported ALJ opinion you think? Yes, Your Honor. Even though the Commission acted? Substantial evidence. Go ahead. Yes, Your Honor. Okay. When you say it's not supported by substantial evidence, do we give deference to the factual findings? Do we apply the coyly erroneous standard? What what standard do we do we apply to the factual determination? It is very clear as my colleague puts out in her brief and I put in my brief as well that the ALJ is entitled to deference to her factual findings. However, those factual findings must be supported by substantial evidence. Deference or no deference. And I believe that the record is very deplete of any evidence, much less substantial evidence, supporting her decision. Thus the extraordinary remedy of overturning her credibility and her inference decision should be applied in this case. And as I pledged those out in my briefing, as detailed as I could, of all the different reasons why I believe there is no substantial evidence in this case. For example, Your Honors, if you will, the very first point I would like to make on my argument is that if the citation itself alleges a violation of 56.15005, which is the fall protection standard, there's three requirements that must be proven by the secretary to support such violation. And that is someone was working, where there was a danger of falling, and three, not wearing fall protection. Well, when you look at the citation that was that was issued by Inspector Swan, those elements were not met in that citation or at the hearing. And if you I mean, the I have the citation in the joint appendix, or I'm sorry, the the joint yeah, joint appendix, it's a joint appendix page 107. And the language within the citation says this could the positioning of the cart could put a person using the cart approximately two to three feet from the edge of the high wall with their back to the edge. That's not enough in my mind, Your Honor, to support a violation because it is not a violation of the standard to have a cart next to an edge of a high wall. It's a violation to be in a fall hazard zone without wearing fall protection. Now the secretary Well, of course, the inspectors there almost the time this happens, right? He came after he saw no one working. Well, but well, how long was it after? That's a better question. Well, it was the inspect seconds after, right? No, Your Honor. It was I thought I thought he twist the thing around right before the inspector gets there. That is correct. But that is correct. Maybe I should go back and talk about the facts a little bit more. What happened? Mr David Becker was the individual at the mind, the minor. He is a lead blaster of bus and quarries. Okay, so what his job was on December 4th of 2014 was to suck basically water out of drill holes so then they can put powder in the holes and blast them. Okay, the drill holes are, you know, bus and has a drill that drills holes into the top of the high wall, and they're about nine ft from the edge of the high wall. So there's nine ft between the edge of the high wall and the drill holes. When Mr Becker got to work, he unloaded a pump cart, which is basically a move our house, you know, move boxes and attached to that is a is a pump that he uses to suck out the water from from the holes. He unloaded that from a truck. Another truck came and he unloaded with the handles facing away from the high wall facing towards him about 7 to 8 ft away from the edge of the high. I thought at some point the handles were twisted around. Keep going. Okay, a few minutes later, a second truck arrived called the powder truck, which Mr Becker had to unload bags of powder from that truck. Well, where he placed where he originally placed the pump cart was in the way of where he's gonna unload the bags of powder. So what he did, he grabbed the handles of pump cart and spun it around, get it out of his way to unload the bags of powder. This evidence was undisputed trial. And once he did that, the edge of the or the back end of the car where the handles are was 4.5 ft from the edge of the high wall because he had spun it around. But he was never 4.5 ft from the edge of the high wall. M should never alleged that he was 4.5 ft of the edge of high wall of trial. Um, so after he spun it around your honor, that's when the inspector showed up. He saw the cart in the second position after Mr Becker had turned it around. And the inspector testified that that raised a red flag. The mere positioning of the cart raised a red flag again. That is not a violation of the standard. There would be no fall protection standard if equipment was not in the fall hazard zone if you follow. So it's not a violation for the position. But needless to say, once the inspector got up to Mr Becker, Mr Becker did show the inspector. Hey, I don't need to wear fall protection because all I did was spend the card around and here's how I did it. And the inspector testified a trial that that is exactly that Mr Becker showed him how he did it without getting any closer to the edge of the high wall than the inspector was. The inspector was standing right next to him, 89 ft away from the edge of high wall when Mr Becker showed him how to do it. All of this is undisputed. The inspector, Mr Swan corroborated Mr Becker's testimony on basically how he spun. As you know, the LG found some things not credible. You say, don't we don't have to go to the credibility finding? Well, that is my final point on appeal. Your honor is that the credibility finding, uh, it's unsupported by anything. Is it essential to your argument or not? The credibility point? I really it's a third argument for a reason. It's because I don't think it's the most important argument because when you look, is it essential? Do we have to make a reverse a credibility call to rule for you? I do not believe in order to rule in this case in favor of us and that you have to make a credibility call. However, I still believe that credibility is important, especially whenever the inches on witness, the only witness in the case for him, should agree with Mr Becker's testimony corroborated his testimony. So if the inspectors testimony credible in turn, she would you think you'd find should have found the employees testimony credible. Um, so the secretary will argue, as she did in her or his as in the briefing that the the problem I have with the citation, your honor from from initial standpoint is it basically makes it a violate future conduct of violation that that cannot be done under the mine act. You have to actually allege an actual violation. Mr Swan did not allege a violation. He's saying this, the positioning of the cart could put a person approximately two ft from the edge of high wall with her back to the edge. Not that one was there ever with no without wearing fall protection, but that one could theoretically be there. So you'd have to go use those handles to move it though, right? That's what they're trying to say to you. What they're trying to say. And when you moved them, you'd be out 3.5 ft or you had to be out 3.5 ft at some time. Don't they have a circumstantial inference? The judge inferred without support. I argue that you would someone if they were to use a car, get behind it and use it. However, that is directly disputed by both the inspector's testimony as well as business testimony. That is not how it was used in the case. Just because something is designed by one how one judge thinks she may have used it doesn't mean that that's what the facts support. And in this case, the facts does not support her inference on how it was used. There was no footprints here on no fresh footprints, which the inspector even met and admitted there is no fresh footprints between the edge of the high wall and the end of the car. After it was turned, there were footprints, but they weren't fresh, right? They were old and there was still drill dust in them from the prior drilling. There were not that was not disturbed, so there was no fresh footprints and inspector never saw anyone working between there. And not only that, your here's here's where I think the clincher is. The inspector's own testimony when questioned by the L J admits that he's not saying anybody ever would work between the edge of the high wall in where the pump car handles were when he saw that. Instead, he's saying that the possibility is there again. That's not a violation. There's no difference in that than the ST Louis Metropolitan Police issuing me a ticket for parking my car and alleging that I didn't wear my seatbelt. The car is there doesn't mean I did not wear my seatbelt. The pump is there. It does not mean that it was moved in such a way. It does not mean that it was not wearing fall protection. Just because someone could theoretically break a law doesn't mean that somebody actually did. And that's what him should the burden of proof. Basically, what, um, what the split decision commission said and what my argument is, is that the secretary dispensed of the burden of proof in this case because they're a violation. But I thought they also based it upon the logical assumption that if you have a cart with handles, you're gonna move it with handles and that to get it to where it was located that the employee had to have been within about three ft of the wall. And your honor, my response. And so isn't that I thought that was the gravamen of their of the of the argument. That was what the judge's inference was. However, the undisputed evidence, the corroborate evidence of both Mr Becker and the inspector was that that's not how the cart was moved. Well, that's what Becker said. But but they said, well, okay, you're going to use this very clumsy, difficult way to move the cart. But when you have a very simple way with a set of handles, we're not gonna believe Becker that he that he used this kind of clumsy, push it around method as opposed to just grabbing the handles and moving. But he did use the handles to move it. He just spun it instead of getting behind it and placing himself in a danger of falling. He took the right action. Well, he testified to and what Mr Swan admitted that he saw Becker do later was just to quickly spin it around. And Mr Swan admitted in his testimony that when he saw Mr Becker spin it around by the way that Mr Becker said he did it, it was a very quick action. It was like almost instantaneous. It was not clumsy. It was not difficult. That's that speculation I'm getting at the judge was basically inferring. But as for the reasonable common sense approach, you know, you can make the other side that it would be more common sense to move it quickly like that rather than get yourself in an area where there's fault protection where you need to follow where fall protection. And again, it's just that the evidence does not support the judge's opinion. In this case, there was no testimony. And you're in your bottle. You know that? Oh, yeah. Sorry. I'll go for a few more seconds. And I'll have to. Uh, so we just believe that the substantial evidence does not support the case. The record as a whole must be considered when engaging substantial evidence. Um, and when I think when you look at the record of the whole, when you look at the testimony of Mr Becker, when you look at the testimony of the secretary's only witness, that record as a whole does not support any of the Um, and quickly, your honor, just to make mention the evidence that the supports the corroborates Mr Becker's testimony is that he actually again demonstrated the way he moved the cart. Mr Swan testified that he saw how he moved the car. The inspector never said anybody was between the edge of the high wall and the rear of the pump. Instead, he testified that just somebody could theoretically be there. But again, it's not enough violation. There's no fresh footprints between the edge of the high wall and the rear of the cart to indicate that someone was there. Um, and again, I lay out more because I'm getting into my deeply in a rebuttal time. There's there's just a lot more evidence in my briefing of substantial evidence, obvious on our side. But again, I know that's not enough for me to win. You have substantial evidence on both sides, and that's no good for me. But the argument is there is no substantial evidence supporting the judge's decision. And I'll say my last 30. Thank you. Thank you, Miss Toller. May it please the court. Emily Toler for the secretary of labor. Bussin essentially asked this court to engage in exactly the kind of second guessing that this court has repeatedly held that it will not do. They identified no compelling reason for the court to depart from decades of principles, and the court should decline that invitation and I petition for review. That's true. I think Judge Benton because of the point that you raised, which is essentially that the credibility finding is essential. In this case, the judge discredited Becker's testimony and simply didn't believe that he said he did what he did. That is exactly what administrative law judges are entitled and, in fact, supposed to do when they are resolving cases. And they haven't identified any reason that I see that the court should take the extraordinary step of setting that credibility finding aside. Would you address Judge Benton's initial question? What is our standard of review and what level of deference do we apply to a two to two decision and the ALJ in these kind of a unique fact situation where you've split decision? Well, the commission has held that, as we mentioned in our brief, the effect of a split decision is to allow the ALJ's decision to stand as if affirmed. The Tenth and Third Circuits have held that the Court of Appeals reviews the ALJ's factual findings and essentially doesn't really ignore the commission's decision. The cases aren't perfect, admittedly, that treat this, but it is the judge's findings that are reviewed for substantial evidence, not the commissioner's. And substantial evidence, of course, means evidence that a reasonable mind could accept as adequate to support the conclusion that the judge reached. And I think there is, in fact, substantial evidence in this case. And to hold it there's not would be to say that the judge could not possibly, within the bounds of reason, have reached the conclusion that she did. Well, address his main point, which is what you're talking about is circumstantial evidence of what's going to happen in the future. That's what he's saying you're trying to do. Right. And I think that certainly the citation was not drafted perfectly. The citation, or you know, part of the citation does say that the position of the cart could put a person in danger, but the citation also says that the pump was located in the position that it was located in. The inspector's notes clearly discuss the conversation he had with Becker. He knew that Becker had supposedly told him what happened, and Dana Busson testified that when the as the problem for him, the location of the pump and it's being placed there. I suppose the inspector could have drafted the citation to say Becker moved for Becker located the pump between the edge of the high wall, but I think using the passive voice instead of the active isn't fatal to a case. And more importantly, the judge or the judge found a violation in this case based on testimony at the hearing, not on the paper that MSHA issues. What matters is whether there was evidence at the hearing to support the judge's finding. You have the burden of proof? Before the judge, yes, but the standard of review before this court is... Well, address the two commissioners who said that the ALJ reversed the burden of proof. Well, I disagree. Give us reasons for that. Go ahead. The inspector testified again that part, the inspector testified about the reason for the violation, that the pump was located in a place where it would have put anyone who was moving or using it a couple feet, two or three feet away from a 17-foot drop. And, you know, I think, I don't know what else, I suppose I don't know what else to say to you, Judge Bennett. Well, he adds to that. He adds, well, how do you know they wouldn't have equipment when they do that? Because, you know, that's in the future. They could even get safety equipment up there. Well, I suppose they could have, except that Becker told the inspector and the inspector testified to this fact that he didn't need it and didn't think they needed it, that it was... Now, that part of that part of the testimony is believable, right? That part of Becker's testimony is believable and other parts aren't, right? Well, other minors testified to that fact as well, Judge Bennett, and so I think it was pretty clear that nobody planned to use fall protection this day, but, you know, again, that's kind of beside the point, because whether anyone planned to use fall protection is not the basis that the judge found, well, may have been part of the basis, but at least the sustainable basis of the judge's decision is that she found, after discrediting Becker's testimony, which is perhaps the decision to which a judge should receive the most deference, she simply said, I don't believe it. And I think that it was, I think that the way the pump was a couple feet away from a very, very steep drop indeed. Counsel, isn't there a distinction, though, between momentarily entering within six feet of a high wall edge and working where there's a danger of falling? I don't think there is a distinction per se. I think that, clearly, yes, the secretary has to prove working where there is a danger of falling. I think substantial evidence in this case does establish that there is a danger of falling. The edge of the high wall wasn't marked. It was dusty and dust-obscured edge. This, I think, just being a two or three feet away with your back to the edge of a high wall does establish that there is a danger of falling. I also think, to get back to the credibility findings a little bit, what the judge found here was eminently reasonable. I mean, anyone who's used a cart like this knows that the way you move it, the easiest way to move it is to get behind it and move it like it's supposed to be done with the handles. It's true that... Nobody else testified you couldn't move it by the spinning around deal, right? Everybody knows you can move it by spinning them around, right? It's true. No one testified that you can't do it. The inspector did agree with, or did testify that that's what Becker did once the inspector got up there. But as we explain in our brief, there is no reason to think that what a minor does once an IMSHA inspector is up there has already identified a hazard and is going to do the same thing as this minor might have done when, you know, there was no inspector around. He's just trying to do something quickly. Those are very different things because, as we under the Mine Act, that their employers could face citation under the Mine Act and they could be disciplined at work. And those are all reasons that it would... that it makes sense, perhaps, for a minor to try to justify... I don't mean to impugn anyone's motives, but to explain what he did in a way that might not necessarily have been the way it happened initially. Like, I don't think that there's evidence compelling the conclusion that what he did after the inspector arrived. I also... So going... I just want to circle back to the first... very first issue we talked about. So in your position is that we owe substantial deference to the ALJ's credibility finding, which means that if we accept his credibility finding that Becker was not telling the truth, then that provides the substantial evidence. Is that sort of where we are with this case? I think that's correct. Yes. Because without that credibility finding, if you... because if you believe Becker, then there's no violation, right? He was never within the six feet, arguably, because he moved it with the handles facing away from... I mean, his testimony, as I understand it, I moved it with the handles facing away from the high wall. I'm never within six feet, and then when I get it there, I spun it, and that's why the handles are within four feet of the high wall. I mean, that's basically his testimony, right? I think that's right. So if you believe that, then there's not substantial evidence. So the credibility finding is essential to the determination, it seems to me. I'm somewhat reluctant to admit that there wouldn't be substantial evidence. I think setting aside the credibility finding would make this a much harder case about exactly how much speculation could sustain a violation. So with that kind of academic reservation, Judge Molloy, then I will agree that the essential finding here is a credibility finding that establishes that a minor was in danger of falling and working where there was a danger of falling. I also just want to note that the cases that bust insights for attacking the ALJ's credibility findings aren't really relevant. Those cases are all decisions concerning eligibility for benefits under the Social Security Act, and as we explained in our brief, the standards that courts apply to reviewing judges' decisions in those cases is more searching than the simple substantial evidence standard that should be applied in this case, simply- But they are similar to this case in that we're often there reviewing a true ALJ's finding after it's gone through various levels of the Social Security bureaucracy. So it does look a little like this case in that regard. I think it looks a little like this case to the extent that it's any agency decision because I think- In most agencies, we get something from the true agency, not a two-two decision. Counsel, not to be mean, but to be honest. Go ahead. Well, I suppose I meant simply that agency processes are- I shouldn't speculate. I don't know much about Social Security administration and how they deal with that. My point was we end up reviewing an ALJ there like we're doing here and not the intervening issue in most agencies we get. You understand. Right. Okay. Yes, I agree. Yes, this is reviewing an ALJ's decision, but the case law is clear that the same substantial evidence still applies. I don't know of any cases that has arisen in the Mine Act where a court of appeals has pulled back the curtain and reweighed evidence because that's simply not the standard of review under the Administrative Procedure Act or under the Mine Act. The Mine Act is clear that the judge's factual findings are substantial evidence. As long as the judge could rationally have reached the conclusion that she did, then I think this court is bound to affirm that decision. I realize I have a few minutes left, but if there are no further questions, then I'll just close by emphasizing that Busson's argument, when you boil it down, is that the judge should have decided things differently, should have credited different testimony, but that's not the standard that this court applies. To accept that argument would require the court to conclude that the judge could not rationally have made the decision that she did, and I don't think the evidence compels that conclusion. Thank you. Thank you, Ms. Tolbert. Mr. Silke? Thank you, Your Honor. Real quick. Yes, credibility is very important in this case. The reason why the judge's credibility decision should be overturned is because the Secretary's own witnesses corroborates Busson's witness and supports his credibility. There was no footprints between the edge of the high wall and in the rear of the pump. It was undisputed. No one disputed how Mr. Becker moved the pump other than the judge's inference on how she may have moved the pump. So I believe credibility is at stake here. Becker did say he did not need fall protection because he did not believe he was in danger of falling because of the position he moved the pump in. My time is done. Thank you. Thank you for your arguments. Case number 17-2281 is submitted for decision. We'll hear you now in